Next case is McDonald v. Cashcall Bet all Mr. Barlow May it please the court, Joseph Barlow on behalf of Appellants, Cashcall and all would like to reserve three minutes for rebuttal if I may. Granted. This case is a dispute about a consumer loan. The loan agreement contains an arbitration provision allowing either party to select AAA or JAMS to administer the arbitration pursuant to, quote, the rules and procedures of AAA or JAMS. The loan agreement also contains a choice of law clause stating that the agreement is governed by the law of the Cheyenne River Sioux Tribe in which tribe the owner of the lender of record was an enrolled member. You said the rules of the tribe? The agreement is governed by the law of the Cheyenne River Sioux Tribe. The law of the tribe. Correct. The question before the court is whether in the first instance an arbitrator should be allowed to decide what law to apply to the loan agreement or whether only a federal judge can decide the issue. Cashcall's position is that the arbitration provision agreed to by the parties should be honored and AAA or JAMS arbitrator should rule on the merits of Mr. McDonald's claims including what law governs his law. But the agreement specifically says that the role of the AAA and JAMS is to administer, not decide. So you're asking us to rewrite the contract, aren't you? No. With respect, we do not believe that the term administer is intended to be different from conduct, that to administer the arbitration is to conduct the arbitration. And in fact, that is what has happened in a dozen cases in which AAA or JAMS has indeed heard cases where similar borrowers who have similar agreements have filed arbitration demands and AAA or JAMS have heard those with no objection whatsoever from cash call. But that doesn't mean that they complied with the agreement. The fact that they occurred doesn't mean they were in compliance. And if they're not in compliance with the agreement, arguably they may not be subject to being enforced. Well, a couple of things on that, if I may, Your Honor. First of all, it is certainly our position that the option to go to AAA or JAMS is meant for AAA or JAMS to fully conduct the arbitration. There's no role whatsoever for tribal participation at all. That would be inconsistent with another term of this agreement, which says that the arbitration shall be conducted by a representative of the tribe. So in order for those two clauses to survive each other, they have to be read such that AAA and JAMS gets to administer and the arbitration must be conducted, assuming such a thing exists, by a tribal representative. And we're supposed to ensure that it can be read harmoniously. So you're asking us not to do that. You're asking us to rewrite the contract and read them in such a way that it doesn't give harmony to the arbitration before the CRST representative. Respectfully, I do not believe that that is what the revised arbitration agreement, which is the arbitration agreement at issue here. It was an earlier version. The arbitration agreement at issue in Mr. McDonald's loan does state that at Joint Appendix 87, you shall have the right to select any of the following arbitration organizations to administer the arbitration, American Arbitration Association or JAMS, et cetera. And it says that the arbitration will be governed by the chosen arbitration organization's rules and procedures applicable to consumer disputes to the extent those rules and procedures do not contradict the law of the Cheyenne River Sioux Tribe. And the rules of AAA, when they define administer, it has to do with the mechanism to start the arbitration, not decide it. So doesn't that foreclose your argument that they were contemplated by this agreement to do something like decide? No, I don't believe it does. In fact, I think that no matter who is going to decide the substantive questions, that is fully appropriate for an arbitrator to decide that, looking at fundamental principles of choice of law, looking at the restatement, looking at the facts at issue here, looking at the connection or lack of connection between the tribe and the parties. What the provision states is that the rules and procedures of AAA or JAMS shall apply. There is, we cite in our reply brief, to a specific instance where the arbitrator determined and issued an order that the AAA rules and procedures guided by the Federal Rules of Civil Procedure and analogous Florida statutes would apply. I think where your honor is getting to is then once you have an arbitrator, whether you have a court or an arbitrator, whoever the arbitrator is, that arbitrator has to decide, are these claims legitimate? Are they meritorious? In deciding that, the arbitrator is going to look at what law applies. I wasn't speaking of that at all. I was speaking more of what entity would make the initial determination about whether this agreement is even enforceable. And you talk about the delegation clause and you say an arbitrator has to make that decision. I understand your position on that. Then we have to look at, okay, and I think the submissions is likely sufficient that there's been a challenge to whether that's a viable delegation clause. If you disagree, assume they preserved it. Then we have to figure out, okay, what arbitrator are we going to? The brief concedes that there is no CRST representative arbitration available. It's nonexistent. Then the next question is, okay, what else does your agreement speak to? It speaks to JAMS. It speaks to AAA. Yes. We look at the plain language of the agreement and it says there, we by agreement are only allowing this to go for administrative purposes only. As a result, there is no contemplated or arbitral forum for your ultimate decisions, the merits decisions, to be made. Unless you want us to read out to administer. Respectfully, I think you can do two things. One is, I do not believe that administer. I believe that it is possible to read administer as encompassing conduct. Okay. Number two, you certainly may read out administer if you think that that is necessary. It is a fundamental principle of the cases of this court, Caroin Tenant Healthcare Systems, and the Supreme Court that under the Federal Arbitration Act, any ambiguity should be read in favor of arbitration. To the extent that there is ambiguity, then it should be, that ambiguity, the contract should be read in favor of valid arbitration, which here would be before AAA or JAMS. As an alternative, the court could determine to settle any provision that it determines to be invalid. Now, the district court addressed the severance issue only in footnote five. And the district court determined that the central purpose of the contract, of the arbitration provision, rather, was not to arbitrate, but to avoid federal or state law. Respectfully, we think that is incorrect. And we think that because the Third Circuit has consistently recognized the significant impact of a severability provision clause in determining whether an invalid provision can be severed, and because the agreement issue here at Joint Appendix 89 states, if any part of the arbitration provision is held invalid, the remainder shall remain in effect, that this court certainly may, in the alternative, sever. Before we get to severance, can I go back to something? Sure. Yes, Your Honor. Under agreement to arbitrate, shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules. What are the consumer dispute rules of the Cheyenne River Sioux Tribal Nation? I did not believe that there are any consumer dispute rules for the Cheyenne River Sioux Nation. All right. Let's talk about the authorized representative. Who are they? What are their names? The people that have actually conducted these. My understanding is that there was a single arbitration that was commenced with a Cheyenne River Sioux representative. And who was the representative? I did not recall his name, but that was an Anishinabur case, and that was a case involving So with all of these cases out there, you're only citing one case with one authorized representative of the tribe? We are not. That's actually conducted in arbitration? We are citing approximately 12 cases that have been conducted before the AAA or JAMS. No, I'm not asking about AAA or JAMS. I'm asking about the authorized representative of the tribal nation. Yes. You identified one person, unnamed person. I believe it was Robert Chasing Hawk, I believe. Robert Chasing Hawk. Okay, so he's the authorized representative. So we've got all these cases out there, all these people upset about the interest rates, and you've only got one arbitration by Robert Chasing Hawk that seems to track the language of the agreement here that an authorized representative of the tribe would conduct the arbitration. Is that right? It is our position here that there are not CRST procedures available to conduct the arbitration, that the arbitration is to be conducted by AAA or JAMS. How do you conduct arbitrations in accordance with consumer dispute rules that don't exist? Because the contract says that the arbitration may be conducted in accordance with the rules and procedures of AAA or JAMS. Certainly, if we had a case where even if it didn't exist. It says it's consumer dispute rules. Are you saying it's refers to JAMS? So what I'm referring to is that there is. I mean, it seems obvious to me that it's is referring to the Cheyenne River Sioux Tribal Nation. Is that incorrect? I don't, that is correct. However, the agreement. You're saying it's rules, but there aren't any. So we've got this, I mean, it's, I've never seen anything like this. Why was the Seventh Circuit wrong when it said that this provides a decision is to be made under process that is a sham from stem to stern? Doesn't the Alice in Wonderland aspect of this provision that you and I just reviewed prove in spades what the Seventh Circuit described this process to be? The Seventh Circuit had an arbitration agreement before it that was different than the arbitration agreement here. The Seventh Circuit arbitration agreement did not contain the choice to arbitrate before AAA or JAMS. Now, your honors may believe that the choice to correct the deficiencies that you've just pointed to was not stated as clearly as possible. The choice being that, yes, you can now go to AAA or JAMS, which clearly is a respectable arbitration for. However, to the extent that there is any concern that it was not sufficiently clear that AAA or JAMS are an alternative, then that ambiguity should be read to allow for this case to go forward. Why should we bail your client out on that when it is so extraordinarily simple to write an agreement that says any disputes hereon shall be arbitrated in front of AAA, JAMS, or any other arbitral firm to be agreed upon by the parties? Well, there's no magic in that. It just seems so shockingly simple, isn't it? In hindsight, it seems very simple. In hindsight, the original arbitration provision was flawed. The arbitration provision at issue here was corrected to provide an alternative. Our position is we're not asking to be bailed out. The Federal Arbitration Act provides that if there's ambiguity, that ambiguity should be in favor of arbitration. To the extent that the arbitration goes forward to AAA or JAMS, and this court has the authority to direct that the district court retain jurisdiction, and if there is no valid arbitration that allows Mr. McDonald to pursue his statutory remedies, then, in accordance with the VMAR, at the award enforcement stage, that can be considered. However, we should respectfully submit that the number of cases that have gone forward to AAA or JAMS applying this agreement, the modified agreement that provides for that option, demonstrates that it is a valid option and that Mr. McDonald can pursue his remedies before a AAA or JAMS arbitration forum. I see that my time has... Okay. Thank you. Thank you, Mr. Barlow. We'll hear you on rebuttal. Mr. Wessler. Thank you, Your Honors. May it please the Court, Matthew Wessler for the employees. May I thank Judge Schwartz and Judge Hardiman. You both got this exactly right. This arbitration agreement is a sham from stem to stern, and every court of appeals that has addressed it, and multiple panels from multiple circuits have done so, have rejected every single one of Cash Call's arguments at every turn. But Mr. Barlow's argument is if this is such a sham and it's so unclear as to what should happen here, why have there been so many arbitrations that have actually occurred under the auspices of JAMS or AAA? We don't know how many have occurred. There have been some that have been filed in front of AAA and JAMS, but I think the 11th Circuit fielded this exact argument in Parnell 2. There have been multiple iterations of Parnell, which was a follow-on from the Neshing Bar. But in the second decision in Parnell, Cash Call got up and made the exact same argument that these AAA and JAMS arbitrations that are proceeding. And so as a result, we should interpret this agreement to permit those to move forward. And the 11th Circuit flatly rejected it in an unprecedented opinion where they just simply said that would be rewriting the contract. And under the FAA, our job as a federal court is to enforce this contract as written. And there is nothing in that one clause, the AAA or JAMS administration clause, that frees Cash Call or any of these defendants or us as a court from requiring a set of arbitration procedures that don't exist under an authoritative representative of the tribe who doesn't exist. And so as a result, the mere existence of some arbitrations that are proceeding cannot alter the ultimate outcome of our job under the FAA, which is to look at the plain text of this agreement and decide whether it mandates a set of arbitration procedures and requirements that are simply unenforceable. And so it seems to me that the courts of appeals have taken two different approaches to looking at whether this arbitration agreement is enforceable. And the one approach is that the whole matter of arbitration is illusory. And the other approach is that there's been a prospective waiver of federal statutory rights, and you can't have that prospective waiver. Which is the better approach? Well, we think either one is obviously a good decision to resolve this case. It makes more sense. I think the approach that Judge Wilkinson in the Fourth Circuit adopted in Hays, right out of the gate, renders this entire arbitration agreement unenforceable and doesn't require the court to drop down one or several levels to decide whether or not the AAA administration clause changes the mandatory language of the agreement. And I think Hays and also in the follow-on case— So you're taking the prospective waiver route as the preferred one? We think, I mean, logically, that's logically a decedent approach. Isn't that a little aggressive, though? I don't think the Supreme Court's ever endorsed that, has it? Oh, I think they've absolutely endorsed the doctrine. Now, they have never applied it to invalidate an arbitration agreement, but I think in Hays the Fourth Circuit was right when Judge Wilkinson wrote a letter that even in Italian colors, American Express versus Italian Colors, Justice Scalia, in that opinion, was very clear that the prospective waiver doctrine continues to hold force in the context in which there's an arbitration clause that contains an express prospective waiver of any federal statutory remedies. But that doctrine's only been applied where there's been federal causes of action.  So wouldn't the prospective waiver doctrine only affect your federal claims? I don't think so, Your Honor. And I pointed the court to the Fourth Circuit's decision in Dillon, which was a follow-on case to Hays, and in that case there were both federal statutory causes of action, very much like this one, federal legal claims, and state causes of action. And did it rely on prospective waiver? And they held exactly that there was a prospective waiver of the federal statutory remedies. And here's the key. But what about the state ones? That's really the issue. Yeah, here's the key. The reason that that doctrine applied and rendered it unenforceable is not because it necessarily applies to the state causes of action, but the effective mitigation doctrine is a doctrine that addresses whether or not the arbitration agreement is enforceable as a matter of public policy. And so what the Fourth Circuit said is because it contains this prospective waiver of federal statutory rights, it's invalid as a matter of law. In other words, it's categorically unenforceable because it's an attempt to contravene public policy. What about an agreement that says we waive federal state rights, we waive all U.S. law, and they choose to apply the law of France? You're saying that's a prospective waiver? That could be a prospective waiver, but that implicates a different part of the FAA. It implicates Chapter 2 of the FAA and the treaty that requires the enforcement and recognition of foreign arbitral awards. And in that context, there's a different analysis that comes into play because of the international economy concerns that relate to whether you enforce American law or international law. But don't those agreements have – those are de rigueur to the FAA, aren't they? In international trade, people choose all kinds of foreign law and choose not to apply U.S. law, and I'm not aware of courts saying that those agreements are invalid, unenforceable, or that there's some prospective waiver. I would disagree with that last part. I think courts have said they can be unenforceable under the effective mitigation of rights doctrine. In the defense of some of these cases, that's Lindo from the 11th Circuit, Agaro from the 4th Circuit. These are international cases where the parties have done exactly what Norma has described. Mitsubishi Motors is a Supreme Court case in which this happened as well. And what the courts have said in that context is if, as a result of that agreement, a party is effectively deprived of their right to seek a federal statutory remedy where it would otherwise apply, then the effective mitigation of rights doctrine would invalidate the agreement. But isn't that why it has to go to the second – it doesn't – that issue gets dealt with at the enforcement stage? In Chapter 2 FAA cases, it gets dealt with on the back end. We're not in that world here. We're in the world where, as Justice Scalia said in Italian Colors, a prospective waiver of statutory rights can be dealt with and invalidated on the front end where what we're talking about isn't an international agreement that applies some foreign sovereign's law. When what we're talking about – They're saying this is a sovereign's law. It's not a foreign sovereign. It's a domestic sovereign. Sure. They say that we've just chosen a sovereign's law that's different than the state and federal law. Sure, but it would be no different from saying the law of a made-up place. If you don't get to take – Which gets us to whether it's illusory. I absolutely agree. So are these two things conflated then? Are we having a semantic debate about that? Well, no. I think they're distinct conceptual – as Judge Vanaski said, they're distinct conceptual tracks for getting to the same outcome. I think this contract is illusory and unenforceable for that reason, but it also very, I think, clearly and unambiguously does foreclose the right of any claimant to seek remedies under federal and state law. But under that theory, then as – going back to what Judge Vanaski was asking, which one's the better to rely upon, if the prospective waiver doctrine is one where that issue could be teed up at the enforcement stage, isn't that a bad outcome for you because don't you want it resolved now? Yes. If there's no – from your point of view, there's no arbitrable forum in which this proceeding could actually occur, so there'd be no enforcement stage. Yes. Judge Horst, just to be clear, we think either one requires invalidation of this agreement. So if this panel believes that the illusory nature of this forum requires the contract to be invalidated, that is a legitimate basis for resolving this case. But when it comes to motions to compel arbitration under Chapter 1 of the FAA, the effective indication of rights doctrine applies at the outset. When there's an express waiver of federal statutory rights, that contract is unenforceable at the outset, ex ante, and it is not something that requires waiting at the back end. And that applies both when it comes to the federal statutory claims, and because it contravenes public policy, it is unenforceable as a matter of law and can't be upheld in some way to channel the state law claims into this impossibly illusory forum that just doesn't exist. So you're saying that's what Dillon says, that Dillon treats the state law claims under the prospective waiver doctrine as a matter of public policy while the federal is a matter of law. Is that your position of what Dillon says? I would just put a slight tweak on that. What Judge Truman wrote in Dillon in the Fourth Circuit is that because it requires a party to expressly waive their federal statutory rights, it is unenforceable as a matter of law because it is an integrated scheme to violate public policy. So it's just unenforceable, period. And as a result, if that means that the state law claims continue to be available and are allowed to be pursued, that's the result of this contract being unenforceable under the effective vindication of rights doctrine. Now, if there were, just I guess to put a final point on it, if there were no federal claims in the case, this doctrine would be unavailable. But there are other avenues that plaintiffs have in the event of something like this to argue that under Section 2 of the FAA, this contract would still be unenforceable because it would not be Section 2 of the Savings Clause except it's enforceable except as under equity or law. And states have tools available to them to invalidate contracts that violate public policy like this one. But just to reiterate, every single argument that you heard in my council's opening phase here has been rejected by one or several federal courts of appeal, including the existence of arbitrations proceeding through AAA and JAMS. And there isn't any reason for this court to only be split with any of these courts one way or another, however the decisional calculus takes this court to reach the same end, which is that this contract could have been written in a way, as Judge Hartman suggested, that clearly authorized a legitimate arbitral provider. It was not ever done that way. It was not intended to be a kind of arbitration agreement that would be enforceable. It was designed to exculpate this company from federal and state law, and it should not be enforced. Unless the panel has any other questions. Thank you, Mr. Westley. We'll hear Mr. Barloon on rebuttal. Thank you, Your Honors. Just wanted to make a few points. First of all, with respect to the question as to whether the revised arbitration agreement, the one at issue here that provides for AAA or JAMS to administer the arbitration, whether that provision would be a complete arbitration, we wish to point out, and this was in the briefs, that the loan agreement states with respect to the CRRC law, you agree that any dispute except as provided below will be resolved by arbitration, which shall be conducted by a shiring of a sued tribal nation by an authorized representative in accordance with the consumer dispute rules in terms of the agreement. We believe that that further makes it clear that what the borrower is presented with is two options. The option of the shiring of a sued tribe, which ideally perhaps that option would have been taken out altogether, but that option or the option of AAA or JAMS. And we believe that that, so I just want to point that out from the joint appendix, bring that to the court's attention. You've made that argument before, or your client has made that argument before, the except as and the question is what does that actually refer to? Does it refer to dispute or something else? Correct. And as I said in my opening comments in response to the questions, there are ambiguities in the agreement, in the arbitration agreement. We acknowledge that. And we believe, however, that those ambiguities should be read in favor of finding an available arbitrable form. We think that is consistent with this circuit's case law, Supreme Court case law, and the FAA. But the types of ambiguities you're talking about, aren't these more the kind that should be construed against the drafter? The drafter's not here, but I don't know. So the defendants are not the drafters? You inherited these contracts, right? To the extent that the defendants inherited the contracts, yes, that is correct. I don't believe that, I don't think that that would overrule the strong, or that that would trump the principle that's inherent in the FAA, that ambiguity should be interpreted in favor of arbitration. We have a clear path to a valid arbitration as you have here. I don't believe, I believe frankly that's, well, let me back up. A number of courts have looked at this arbitration provision, 5-6, we cite them, banks, etc., and have said that yes, this new arbitration provision fixes it, it's okay, it's permissible, it's valid. Okay? Our view is- Is that the case that says that? What case says that? You mean banks? Sure. I can point out the cases- That says this arbitration clause is enforceable. Yes. There is the banks case, Chidoff case, hold on. One moment, Your Honor. Okay. Banks, Chidoff, and I believe there are five, said Williams, in Eastern District here in Wisconsin, banks in the Middle District of Florida, and Chidoff in Florida, and I believe there are two or three additional cases that are in our briefs, all of which held, and Williams is actually interesting. Williams had two plaintiffs. One was the plaintiff had the old agreement, one plaintiff had the new agreement. In Williams, the court said that the plaintiff that had the old agreement would proceed in court, the plaintiff with the new agreement could proceed in arbitration. So our- And that was from Wisconsin, right? Correct. Did that go to the circuit? No, that was settled. Thank you. And the Jackson case, which was in that circuit, dealt with the old agreement. Right. Okay. So it is our view that here there is a clear path to arbitration, which is to allow AAA or JAMS to hear the case. And I would also say that in addition to the principle that any ambiguity should be read in favor of finding arbitration, there's also this court's case, and I believe it's Convey-Dell, that if there's no permissible form, if the court holds that the arbitration provision does not allow for or provide for a permissible form, that the court is nevertheless fine for arbitration if a permissible form is available. Here, clearly, AAA and JAMS are permissible for. Here, they clearly are available. And here, the option to arbitrate for those two forms was clearly set out in Mr. McDowell's arbitration provision. So we respectfully submit that this court should enforce the arbitration provision set forth in the contract that Mr. McDowell signed. Thank you, Mr. Baraloon. The court appreciates the excellent arguments of both counsel, excellent briefing as well. We'll take the matter under advisement.